*Law Library*

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| THE PEOPLE OF GUAM, | ) |
| | )    **CRIMINAL CASE NO. CM0456-13** |
| vs. | ) |
| | )    **DECISION AND ORDER** |
| REID ALBERT, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

## INTRODUCTION

This matter came before the Honorable James L. Canto II on Defendant Albert Reid's motion to suppress, filed June 26, 2013. Oral arguments were heard on August 12, 2013. Assistant Attorney General James L.G. Stake appeared on behalf of the Government, Assistant Public Defender Suresh Sampath represented Defendant Reid Albert. Having considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant is charged with the offense of driving while under the influence of alcohol based upon the following alleged events. On May 14, 2013, Guam Police Officer Paul J. Santos responded to a single vehicle accident. (Testimony of Paul J. Santos, Record Log at 2:59, Aug. 12, 2013). Upon arrival, the medic units were attempting to treat the Defendant's numerous injuries, but the Defendant refused treatment. *Id.* There was a strong smell of alcohol from the Defendant's breath and body, as well as the Defendant's vehicle. *Id.* At 6:45 a.m., Officer Santos placed Defendant under arrest and transported him to the precinct. *Id.* At the precinct, the Defendant did not consent to being questioned about the incident. *Id.* Defendant was later transported to the Guam Memorial Hospital ("GMH") for the treatment of his injuries and for medical clearance before entering the detention center. *Id.* Officer Santos' report indicated that Defendant was transported to GMH, in part, to obtain his blood alcohol content via the drawing of his blood. *Id.* Officer Santos believed that the drawing of blood was a standard procedure of

a medical diagnosis and he did not order the transporting officers to have the Defendant's blood drawn at GMH. *Id.*

At GMH, Defendant signed a form consenting to medical treatment. (Opp'n Mot., Exhibit "1", July 8, 2013). GPD Officers requested that GMH staff provide to them any blood testing information concerning Albert's blood alcohol levels. (Testimony of Donny Pangelinan, Record Log at 3:22, Aug. 12, 2013). This request was denied by GMH staff. *Id.*

On June 12, 2013, the Government issued an unsigned subpoena *duces tecum* to GMH to obtain Defendant's medical records. (Opp'n Mot., Exhibit "2", Jul. 8, 2013). GMH provided the Government with Defendant's medical record from May 14, 2013. Defendant's counsel was not given notice of the subpoena, or the fact that Defendant's medical record was obtained by the Government through a subpoena, until its inclusion in the Government's opposition to the Defendant's motion to suppress. (Record Log at 3:43, Aug. 12, 2013).

On June 26, 2013, Defendant Reid Albert moved to suppress the blood alcohol test because he was subject to a nonconsensual blood draw by a government agent, which he argues to be in violation of Defendant's Fourth Amendment right. The Government opposed suppression on the bases that: (1) Defendant signed a form consenting to medical treatment; (2) the blood was not drawn and analyzed at the direction or request of a law enforcement officer for law enforcement purposes, but by hospital personnel in connection with the Defendant's treatment; and (3) GPD officers' request for Defendant's blood test concerning Defendant's blood alcohol level was denied by GMH staff. Defendant also moved to suppress Defendant's medical records because he asserts the subpoena intruded upon Defendant's right of privacy in violation of Defendant's Fourth Amendment right.

**DISCUSSION**

**1. Fourth Amendment- State Action**

The Fourth Amendment and the Organic Act of Guam provide, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S.CONST. amend. IV; 48 U.S.C. §1421b(c) (2004). For purposes of the

Fourth Amendment, the United States Supreme Court has recognized an individual's privacy interest in their own blood. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826 (1966). To determine whether a given governmental activity is of the kind that is prohibited by the Fourth Amendment, the initial inquiry is whether the action constituted a search or seizure. *United States v. Attson*, 900 F.2d 1427, 1429-30 (9th Cir. 1990). Therefore, the Court must first determine whether the drawing of the Defendant's blood by the GMH employee constituted a search or seizure under the Fourth Amendment.

The Fourth Amendment protections from searches and seizures are triggered only when the search and seizure is a result of a government action. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656 (1984). Thus the Fourth Amendment is not applicable to "a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *Id.* at 113-14. The Court of Appeals for the Ninth Circuit holds that "governmental conduct that is motivated by investigatory or administrative purposes will fall within the scope of the fourth amendment since such conduct constitutes a search or seizure, the type of conduct that is regulated by the amendment." *Attson*, 900 F.2d at 1430-31. An example of an investigatory and administrative purpose is found where a state hospital's employees act pursuant to a policy developed by law enforcement officials to turn over drug test results of patients to the police, without the knowledge or consent of the patients. *Ferguson v. City of Charleston*, 532 U.S. 67, 86, 121 S.Ct. 1281 (2001). Conversely, "governmental conduct which is not actuated by an investigative or administrative purpose will not be considered a 'search' or 'seizure' for purposes of the fourth amendment." *Attson*, 900 F.2d at 1431. Therefore, the court must evaluate whether the conduct in question "has as its purpose the intention to elicit a benefit for the government in either its investigative or administrative capacities." *Id.*

In this case, Defendant argues that the drawing of his blood by employees of GMH, as a government hospital, constituted state action subject to the Fourth Amendment. The Court does not agree. The evidence indicates Defendant's blood was drawn for a medical purpose, that being to treat the Defendant's injuries, and not to obtain evidence of criminal conduct. Further,

there is insufficient evidence to show that the Guam Police Department or any other government agency compelled or directed the hospital to draw and analyze Defendant's blood. Indeed, GMH's denial of GPD officer's request for information concerning Defendant's blood alcohol further supports a finding that the blood draw was not for an investigative or administrative purpose. Therefore, the Court finds the GMH employees did not intend to elicit a benefit for the government in its investigative or administrative capacity, but instead acted for the independent purpose of medical treatment. *See Attson*, 900 F.2d at 1431. For these reasons, the Fourth Amendment was not implicated when GMH employees drew the Defendant's blood, and the admission of the test results will not be denied on that basis.

## 2. Fourth Amendment - Subpoena of Medical Records

Whether a subpoena of a defendant's medical records violates a defendant's Fourth Amendment right, or a right under the Organic Act of Guam, is an issue of first impression for the Court. In exploring this issue, the Court is mindful of the confidential nature of medical records and the interest to ensure patients are not dissuaded from divulging personal information so they may receive appropriate treatment. *In re Grand Jury Subpoena for Medical Records of Payne*, 150 N.H. 436, 440, 839 A.2d 837 (2004). However, this interest in preserving the confidentiality of medical records is in direct conflict with the government's interest in using the information for law enforcement purposes. *Id.* at 440-41. Therefore, the two interests must be carefully balanced under the Court's analysis.

As stated previously, the Fourth Amendment protects individuals against unreasonable seizures of an individual's property. "[T]o state a constitutional violation, the [plaintiff] must allege (1) [the officer's] conduct constituted a 'seizure,' and (2) the seizure, if one occurred, was 'unreasonable.'" *White v. Markham*, 310 F.3d 989, 993 (7th Cir.2002). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652 (1984). With regard to the reasonableness requirement, the courts have generally viewed "a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly

describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637 (1983) (citation omitted). However, there are exceptions to the warrant requirement. "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S.Ct. 946 (2001). "

With respect to a subpoena, the United States Supreme Court determined that corporate records or papers were protected under the Fourth Amendment only against unreasonable disclosures. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208 (1946). Further, "when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. Seattle*, 387 U.S. 541, 544, 87 S.Ct. 1737 (1967). Therefore, "for the purposes of a fourth amendment analysis, the use of a subpoena may, in the proper circumstances, be reasonable and therefore not violate the fourth amendment." *State v. Legrand*, 129 Conn.App 239, 252, 20 A.3d 52 (App.Ct.2011).

In determining whether the use of a subpoena was reasonable, a key fact the courts have considered is whether the defendant was afforded an opportunity to object.[1] *Legrand*, 129 Conn.App. at 255. This fact is significant because it "provide[s] the defendant the opportunity to present arguments to the trial court and challenge the propriety of the state's subpoena prior to the disclosure of any of his medical information." *Id.* at 255-56. Furthermore, "[t]he fourth amendment is satisfied if the subpoenaed party is allowed 'to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in

---

[1] Statutes of numerous states require that notice be given to an individual before medical records are disclosed. *State v. Legrand*, 129 Conn.App 239, 252 n.15 (App.Ct.2011). *See, e.g., Klossett v. State*, 763 So.2d 1159 (Fla.App.2000); *State v. Santos*, 996 A.2d 647 (R.I.2010); *see also King v. State*, 272 Ga. 788, 793–94, 535 S.E.2d 492 (2000) (failure to afford individual notice of subpoenaed medical records resulted in violation of state constitutional right to privacy); *In re Grand Jury Subpoena for Medical Records of Payne*, 150 N.H. at 447, 839 A.2d 837 (state must furnish defendant with notice of grand jury subpoena of medical records).

an action in … court.' " *Id.* at 256. (alteration in original) (*quoting Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415, 104 S.Ct. 769, 773 (1984)).[2]

In this case, the Government issued a subpoena *duces tecum* to GMH requesting Albert's medical records. GMH provided the Government with Defendant's medical records from May, 14, 2013 outside of the Court's presence and not during any hearing where Defendant would have the opportunity to be aware and address the Court. No notice was given to the Defendant regarding the subpoena and Defendant's counsel was unaware of Government's subpoena of the medical records until the Government filed an opposition to Defendant's motion to suppress his medical records. Without notice and an opportunity for the Defendant to question the reasonableness of the subpoena, the subpoena was unreasonable. *Legrand*, 129 Conn.App. at 255-56.

Furthermore, this is a case where Defendant's liberty interests are at issue and it is the Government's burden to show the Defendant's rights were adequately protected in obtaining Defendant's medical records. *See People v. Cundiff*, 2006 Guam 12; *People v. Quitugua*, 2009 Guam 5 (reversed on alternative grounds). Here, the Government failed to show that Defendant was given adequate notice or that any other protective measures were taken by the Government in obtaining the medical records. (Opp'n Mot., July 8, 2013). For all of the above reasons, the subpoena issued by the Government violated the Defendant's Fourth Amendment and Organic rights.

The Courts concludes, on the basis of the foregoing, that the Government's seizure of Defendant's medical records containing blood alcohol testing information violated Defendant's Fourth Amendment right.

///

[2] In civil cases, prior notice is required before production of documents. Guam R. Civ. P. 45 (b) (1). Although 8 GCA § 75.35 fails to articulate the necessity of notice for a subpoena in criminal cases, there is a greater necessity for notice in criminal cases where a defendant's liberty interests are at stake. *See, e.g., People v. Cundiff*, 2006 Guam 12; *People v. Quitugua*, 2009 Guam 5 (reversed on alternative grounds).

## CONCLUSION

Based upon the foregoing, Defendant's motion to suppress is hereby GRANTED. The medical records obtained through the Government's subpoena shall not be admissible against the Defendant.

SO ORDERED this __7TH__ day of November, 2013.

<br>

HON. JAMES L. CANTO II
Judge, Superior Court of Guam